UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA :
:
:
-vs- :
: NO. 3: CR-16- 122
ANTHONY DIAZ, :
      Defendant :
:

INDICTMENT

COUNTS ONE THROUGH SIX

(WIRE FRAUD)

THE GRAND JURY CHARGES:

FILED
SCRANTON
MAY 10 2016
PER _____
DEPUTY CLERK

I. THE DEFENDANT

1. The defendant, **ANTHONY DIAZ**, entered the securities industry in or about January 2000.  Records of the Financial Industry Regulatory Authority (FINRA) indicate that Diaz has been registered with eleven different financial investment firms over a fifteen year period.  Diaz was registered with his most recent employer, IBN Financial Services, Inc., from September 2012 until April 2015.

2. During all times relevant to this Indictment, Diaz was a registered representative and a Certified Financial Planner. He operated his office, under the name Financial Planners Group of America, based in Monroe County, within the Middle District of Pennsylvania, along with a small number of employees. All office employees reported to Diaz. Diaz's customers were residents of Pennsylvania and states outside Pennsylvania.

3. FINRA records indicate that Diaz's relationship was terminated by, or he was permitted to resign from, six of the eleven financial investment firms at which he worked over his fifteen years in the securities industry. For instance:

a. On or about November 21, 2002, Company 1 terminated its relationship with Diaz for providing inaccurate information during a supervisory review;

b. On or about December 6, 2004, Company 2 terminated its relationship with Diaz because it was "no longer comfortable supervising" him;

c. On or about April 1, 2009, Company 3, allowed Diaz to resign because he had a history of customer complaints and administrative infractions;

d. On or about March 3, 2010, Company 4 terminated its relationship with Diaz for unauthorized trading;

e. On or about August 12, 2011, Company 5 terminated its relationship with Diaz because of complaints alleging unauthorized trades;

f. On or about September 19, 2012, Company 6 terminated their relationship with Diaz for soliciting sales of variable annuities without being properly appointed by the issuing company.

4. In February 2013, the Certified Financial Planner Board of Standards, Inc., suspended Diaz's certification for three years for unauthorized trading, recommending unsuitable transactions, using blank forms, altering dates on documents, selling annuities prior to being appointed by an annuity company, and failing to update his contact information.

5. In May 2015, FINRA permanently barred Diaz from acting as a broker or otherwise associating with firms that sell securities to the public.

6. In June 2015, the Commonwealth of Pennsylvania, Department of Banking and Securities, permanently barred Diaz from representing an issuer offering or selling securities in the Commonwealth of Pennsylvania; in addition, Diaz was permanently barred from being registered as a broker-dealer, agent, investment adviser or investment adviser representative in the Commonwealth of Pennsylvania.

## II. THE SCHEME TO DEFRAUD

7. Beginning in or about 2006, the exact date unknown to the Grand Jury, and continuing through May of 2015, the defendant, **ANTHONY DIAZ,** devised and intended to devise a scheme and artifice to defraud and to obtain money and property, by means of false and fraudulent pretenses, representations and promises. This scheme consisted of several parts, some of which are as follows:

8. From at least in or about December 2006, through May 2015, Diaz has been engaged in the practice of selling "alternative investment

4

products" to his securities clients. These alternative investment products are generally high risk, speculative and illiquid investments. Many of the investments have lengthy "holding periods" anticipated to be as long as nine years.

9. In addition, these alternative investment products have specific "suitability requirements" related to net worth, liquid net worth and/or income. Moreover, in Pennsylvania, individual investors are subject to further requirements which prevent them from investing more than 10% of their net worth in any one of these investment products. These guidelines are established by the Pennsylvania Department of Banking and Securities.

10. In order to effectuate sales of these alternative investment products in compliance with these suitability requirements, and in furtherance of his scheme to defraud, Diaz instructed numerous clients to sign blank documents or partially completed documents. Diaz then provided false information on these documents concerning his clients' net worth, income, risk tolerance and/or investment experience in order to make it appear that these clients met the net worth and/or income requirements to invest in these products.

11. In furtherance of this scheme to defraud, Diaz failed to explain to his clients that these alternative investment products lacked liquidity and had no public market for resale. Further, Diaz assured his clients that they would have access to all of their funds that were invested in these alternative investments.

12. Moreover, Diaz informed his clients that these investments were "no lose," "guaranteed" and/or "guaranteed to earn a certain rate of return on investment", when in fact he well knew these investments were high risk, speculative, illiquid investments with no guaranteed rate of return. Diaz also told his clients that they would be able to withdraw their money from these investments at any time, when in fact he well knew the alternative investment products had lengthy "holding periods" which required the investor to keep his/her money in the investment for periods as long as nine years.

13. Further, Diaz failed to explain to his clients that the distributions his clients were receiving were a return of their initial capital investments and made it appear that the distributions were interest earned from their investments

6

14. In addition, Diaz placed his clients in these investments regardless of their age, net worth and income, and did so without inquiring as to the clients' risk tolerance and investment goals and objectives or in contravention of his client's wishes.

15. As set forth herein, Diaz was terminated or allowed to resign from six of the eleven financial investment firms at which he worked over his fifteen years in the securities industry. Diaz routinely lied to, and engaged in efforts to mislead, his investment clients into believing that he had left those firms voluntarily and for the clients' benefit, when in fact he had been terminated due to numerous complaints of unauthorized trading, excessive customer complaints, or supervisory issues. These misrepresentations allowed Diaz to obtain clients and continue to represent clients which he would otherwise not have obtained or retained. As a result of Diaz being terminated from those entities some clients incurred additional fees and expenses to which they would have otherwise not incurred.

16. As a result of the scheme and artifice to defraud described herein, and as a result of the repeated sale of these alternative

investment products to his clients, Diaz earned substantial commissions and fees for which he was not otherwise entitled.

### III. STATUTORY ALLEGATION

From on or about the dates set forth below, in the Middle District of Pennsylvania and elsewhere, the defendant,

## ANTHONY DIAZ,

having devised or intended to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the above-described scheme and artifice, did knowingly cause to be transmitted by means of wire communications in interstate and foreign commerce certain sounds, signals and writings, either sent from or received within the Middle District of Pennsylvania, as more particularly described below:

## COUNTS 1-6

1. 12/20/12   A wire from Sovereign Bank to Ameritech College Holdings for a total value of $40,000 for investor V.S.

2. 1/2/14     A wire transaction from COR Clearing to Carter Validus (UMB Bank) for a total value of $10,000 for investor V.M.

3. 1/9/14 A wire transaction from COR Clearing to Carter Validus (UMB Bank) for a total value of $40,000 for investor M.R.

4. 4/7/14 A wire transaction from COR Clearing and First Trust Company of Onaga to US Energy (Westmoreland Capital Corporation) for a total value of $150,000 for investor J.M.

5. 7/26/13 A wire from COR Clearing to Ameritech (Zion's Bank) for a total value of $30,000 for investor D.K.

6. 5/2/14 A wire from COR Clearing to Lighthouse Value Fund for a total value of $23,000 for investor B.C.

Each count in violation of Title 18, United States Code, Section 1343.

A TRUE BILL

DATE: May 10, 2016

PETER J. SMITH
UNITED STATES ATTORNEY

By: EVAN GOTLOB,
    ASSISTANT U.S. ATTORNEY
    ROBERT O'HARA
    ASSISTANT U.S. ATTORNEY