**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 3-CR-16-122** |
| **v.** | : | **(JUDGE MANNION)** |
| **ANTHONY DIAZ,** | : | |
| **Defendant** | : | |

### MEMORANDUM

**I. BACKGROUND**

By way of relevant background, on March 13, 2018, defendant Anthony Diaz was charged in a Superseding Indictment with seven counts of wire fraud, in violation of 18 U.S.C. §1343, and four counts of mail fraud, in violation of 18 U.S.C. §1341. (Doc. 44).

On March 20, 2018, Diaz was arraigned and pled not guilty to all counts against him in the Superseding Indictment.

On June 7, 2018, Diaz filed a motion seeking, in part, to strike surplusage from the Superseding Indictment. (Doc. 55). Diaz moved to strike allegations in the indictment regarding his alleged misrepresentations to his clients about his employment history and, regarding his suspension and debarment from acting as a broker to sell investment products by regulatory authorities. Diaz contended that the stated information should be stricken to protect him against prejudicial allegations that were not relevant and material to the charges contained in the indictment.

On July 25, 2019, the court[1] issued a Memorandum and Order, (Docs. 80 & 81), and denied Diaz's motion to strike. The court found that the challenged allegations in the indictment were relevant to the elements of the charged offenses of wire and mail fraud, and that they were related to the facts that the government indicated that it would establish at trial.

On December 24, 2019, Diaz filed a motion *in limine*, (Doc. 98), seeking to preclude the government from offering at trial evidence of his alleged prior bad acts and/or other wrongs as detailed in several paragraphs contained in the indictment. Diaz simultaneously filed his brief in support. (Doc. 99).

On January 2, 2020, the government filed its brief in opposition to Diaz's motion *in limine*. (Doc. 100).

The trial in this case is scheduled to commence on January 13, 2020.

## II. DISCUSSION

Diaz's motion *in limine* is filed pursuant to Fed.R.Evid. 404(b) and 403. The motion also seeks, in part, to exclude evidence as irrelevant. It is axiomatic that "irrelevant evidence is not admissible." Fed.R.Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed.R.Evid. 401. Even if evidence

---

[1] Previously, Judge Munley was assigned this case. It was re-assigned to the undersigned on November 4, 2019.

is relevant, the court can exclude it if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

Federal Rule of Evidence 404(b)(1) precludes the admission of other crimes, wrongs, or acts "to prove the character of a person in order to show conformity therewith". However, under Rule 404(b)(2), such evidence is admissible for legitimate evidentiary purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake."

"Rule 404(b) is a rule of general exclusion ...." United States v. Repak, 852 F.3d 230, 240 (3d Cir. 2017) (citing United States v. Caldwell, 760 F.3d 267, 276 (3d Cir. 2014); United States v. Brown, 765 F.3d 278, 291 (3d Cir. 2014) ("Rule 404(b) is generally a rule of exclusion.")). As such, "Rule 404(b) directs that evidence of prior bad acts be excluded—*unless* the proponent can demonstrate that the evidence is admissible for a non-propensity purpose [i.e., not to show the defendant's propensity to behave in a certain manner]." *Id*. (citing Caldwell, 760 F.3d at 276) (emphasis original). Thus, "Rule 404(b) is a rule of exclusion, meaning that it excludes evidence unless the proponent can demonstrate its admissibility, but it is also 'inclusive' in that it does not limit the non-propensity purposes for which evidence can be admitted." *Id*. at 241.

In Repak, *id.*, the Third Circuit explained:

Because Rule 404(b) is a rule of general exclusion, the party seeking to admit other-acts evidence has "the burden of demonstrating [the evidence's] applicability." Caldwell, 760 F.3d at 276. Admissibility under Rule 404(b) requires the satisfaction of four distinct steps: (1) the other-acts evidence must be proffered for a non-propensity purpose; (2) that evidence must be relevant to the identified non-propensity purpose; (3) its probative value must not be substantially outweighed by its potential for causing unfair prejudice to the defendant; and (4) if requested, the other-acts evidence must be accompanied by a limiting instruction. *See* Huddleston v. United States, 485 U.S. 681, 691, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); Caldwell, 760 F.3d at 277–78.

In his motion *in limine*, similar to his prior motion to strike, Diaz seeks the court to preclude all evidence regarding his employment history, including his terminations, and regarding regulatory investigations, including his suspensions and disbarments from acting as a broker and selling securities. (*See, eg.* Doc. 44, ¶'s 1, 3, 4, 5, 6 & 15).[2] Diaz argues that such evidence is unduly prejudicial, irrelevant and immaterial to the specific charged counts of wire and mail fraud, and that the government should be precluded from introducing this evidence pursuant to Fed.R.Evid. 404(b). He contends that the true purpose of the evidence is "to attempt to portray to the jury that because [his] employment and association with various companies ended on unpleasant terms, and because he drew the attention of regulatory

---

[2]Since the challenged allegations and proposed evidence at issue are stated in the Superseding Indictment and specified in Diaz's brief, (Doc. 99), they shall not be repeated herein.

4

authorities in a negative way, it is more likely that he committed the acts of wire and mail fraud alleged in the indictment." Thus, Diaz contends that the other-acts evidence will be offered by the government for a propensity purpose and that it should be precluded under FRE 404(b)(1).

The government responds that the challenged other-acts evidence does not constitute prior bad acts by Diaz, and "[p]roving that Diaz was terminated by various broker-dealers and under regulatory investigation does not establish his propensity to commit the charged offenses, but rather is direct evidence of his associated misrepresentations to clients." As such, the government contends that this is intrinsic evidence, directly relevant to the scheme alleged in the indictment, which is outside of the scope of Rule 404(b).

Prior to performing the 4-step analysis under Rule 404(b), the court "must determine whether the acts in question are 'extrinsic' or 'intrinsic' to the charged offense." United States v. York, 165 F.Supp.3d 267, 269 (E.D.Pa. 2015). In York, *id*. at 269-70, the court explained:

> If the proffered evidence relates to acts that do not form the basis for the current prosecution, such acts are considered "extrinsic" to the charged offense, and a Rule 404(b) analysis is required. Green, 617 F.3d at 245. However, if the evidence either (1) "directly proves the charged offense," or (2) relates to an act "performed contemporaneously with the charged crime" that "facilitated the commission of the charged crime," then such an act is "intrinsic" to the charged offense, and a Rule 404(b) analysis is unnecessary. *Id*. at 249. *See also* [United States v. Davis, 726 F.3d 434, 441 n. 5 (3d Cir. 2013)] (citing Green, 617

5

F.3d at 248–49) ("Rule 404(b) excludes only extrinsic evidence.... It does not exclude intrinsic evidence.").

As the court previously found in denying Diaz's motion to strike, the challenged prior bad acts of Diaz are proffered to directly prove the financial scheme alleged in the indictment.

The court stated in its July 25, 2019 Memorandum:

> In order to prove the crimes of wire and mail fraud, which contain substantially similar elements, the government must establish that: (1) the defendant knowingly devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises; (2) that the defendant acted with the intent to defraud; and (3) that in advancing, furthering, or carrying out the scheme, the defendant (a) (for mail fraud) used or caused to be used the mails, or a private commercial interstate carrier; or (b) (for wire fraud) transmitted or caused the transmission of any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce. See United States v. Hanningan, 27 F.3d 890, 892 (3d Cir. 1994) (mail fraud elements); United States v. Andrews, 681 F.3d 509, 518 (3d Cir. 2012) (wire fraud elements).

(Doc. 80 at 5).

The court then explained:

> The government contends that the allegations in the indictment concerning the defendant's misrepresentations to his clients about his employment history as well as his suspension and debarment by regulatory authorities help to establish the first two elements of the charged offenses: that the defendant knowingly devised a scheme and that he acted with the intent to defraud others. The government argues that these allegations go directly to the heart of the defendant's scheme, which the government alleges was a pattern of material misrepresentations and omissions that induced investors to become and remain his clients. We agree with the government that the allegations

contained in the indictment are, at the very least, relevant for these purposes.

(Id. at 5-6).

The court finds that the challenged proffered evidence of Diaz's other bad acts is indeed intrinsic and thus beyond the scope of Rule 404(b). *See* United States v. Pharis, 298 F.3d 228, 234 (3d Cir. 2002) ("Once certain fraudulent conduct is properly included as part of the charged scheme, Rule 404(b) poses no obstacle because the evidence that is part of the charged crime does not fall under Rule 404(b).") (citations omitted).

The government details in its brief, (Doc. 100 at 2), the following scheme it has alleged in the indictment:

> Diaz was a financial planner who defrauded his clients by misrepresenting the nature of the products in which he invested their money, and his own pedigree. Diaz's scheme to earn lucrative commissions was perpetrated through a myriad of lies and deceit: guaranteeing the safety and rates of return on high risk, speculative investments; promising investment liquidity, with access to funds, for products carrying lengthy holding periods; and falsifying client information on account forms to create the appearance that they qualified for the investments.

(citing Doc. 44, ¶'s 8-13).

The government states that in order to perpetrate the scheme alleged in the indictment and to assist him with maintaining relationships with clients and obtaining additional money from them for investments, Diaz repeatedly made misrepresentations to his clients about his employment history with broker-dealers and regulatory investigations into his actions by authorities.

The court finds that the alleged misrepresentations made by Diaz about his employment history and terminations as well as about his regulatory investigations facilitated the scheme charged in the indictment by allowing him to obtain and to maintain clients as well as to continue with the overall scheme. This evidence goes to directly prove the charged offenses. *See* U.S. v. Staton, 605 Fed.Appx. 110, 116 (3d Cir. 2015) (Third Circuit held that "[e]vidence that [defendant] failed to file federal income taxes together with his use of multiple business fronts from which he received criminally derived income enhanced his ability to conceal his scheme and its proceeds from law enforcement", and since [defendant's] "nonfilings constitute contemporaneous acts that facilitated the commission of the fraudulent scheme, the evidence is intrinsic, and hence relevant, to the charges against him."); United States v. Bush, 741 Fed.Appx. 110, 122-23 (3d Cir. 2018) (Third Circuit held that cash and drug paraphernalia seized from defendant was admissible since it was intrinsic and directly relevant to show defendant's involvement in the charged drug conspiracy, and that it did "not fall within the ambit of Rule 404(b).").³

---

³The court notes that even if the proffered evidence was extrinsic, "it would nonetheless be admissible under Rule 404(b) because it helps prove [Diaz's] intent to defraud his customers." Staton, 605 Fed.Appx. at 116 n.10 (citation omitted). Evidence regarding Diaz's misrepresentations to his clients about his employment history as well as his suspension and debarment by regulatory authorities goes to show his knowledge and intent. "The plain text of Rule 404(b) allows for the admission of other-acts evidence to show knowledge and intent as the Government proffered here." Repak, 852 F.3d

Moreover, Diaz states that his alleged terminations and regulatory investigations occurred years before or after the wire and mail fraud charges contained in the indictment. Diaz contends that the evidence of his prior bad acts is inadmissible since it was outside the scope of the charges contained in the indictment. In its July 25, 2019 Memorandum, (Doc. 80 at 2), the court stated that in the Superseding Indictment "[t]he grand jury found probable cause to believe that between December 20, 2012 and May 2, 2014 [Diaz], who worked as a financial advisor, engaged in a scheme to defraud his clients by misrepresenting the nature of the products in which he invested their money as well as his own employment history and regulatory history." Further, as the government states, (Doc. 100 at 9), "[t]he indictment alleges a scheme lasting nearly a decade, from 2006 through May 2015, during which all of the terminations and regulatory investigations occurred." In fact, the government points out that:

> for several years during the alleged period of the scheme, Diaz was under investigation by the Certified Financial Planner Board of Standards, Inc., the Financial Industry Regulatory Authority, and the Pennsylvania Department of Banking and Securities. In many instances, those regulatory investigations involved the same conduct alleged here—falsified information on account documents, guaranteed rates of return, and misrepresentations about the nature of the investments and Diaz's history of terminations—and in all instances, led to Diaz's debarment and suspension.

---

at 241.

(Doc. 100 at 3-4).

As such, the evidence of Diaz's other bad acts is not untimely. *See* Pharis, 298 F.3d at 234 (Third Circuit stated that "[a] fraudulent scheme can span many years" and, essentially held that the time gap between acts alleged in furtherance of a scheme to defraud spanning over years and the specific wires and mailings charged was not significant.).

Diaz also argues that if the proffered evidence is allowed it must be balanced under FRE 403 and it should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice.

No doubt that the proffered evidence is prejudicial to Diaz. "Evidence cannot be excluded under Rule 403 merely because its unfairly prejudicial effect is greater than its probative value. Rather, evidence can be kept out only if its unfairly prejudicial effect 'substantially outweigh[s]' its probative value." United States v. Bailey, 840 F.3d 99, 119 (3d Cir. 2016) (citation omitted). In this case, the other bad act evidence is highly probative of the scheme alleged in the indictment, and Diaz's misrepresentations to his clients about his employment history and about the nature of his regulatory investigations are "direct evidence of his scheme to defraud, and facilitated his ability to retain existing clients who expressed reservations, thus perpetuating the scheme." (Doc. 100 at 7). This evidence is also probative of the allegations in the indictment that Diaz made misrepresentations to his clients to further the scheme. "The prejudice against which Rule 403 guards

10

is unfair prejudice—prejudice of the sort which clouds impartial scrutiny...The fact that probative evidence helps one side prove its case obviously is not grounds for excluding it under Rule 403." York, 165 F.Supp.3d at 271 (quoting United States v. Starnes, 583 F.3d 196, 215 (3d Cir.2009)). Nor is damaging evidence "necessarily excludable evidence." *Id*. Thus, in weighing the evidence of Diaz's other bad acts, the court finds that its highly probative value outweighs its prejudicial effect and therefore is admissible under Rule 403. *See* Bailey, 840 F.3d at 119 ("evidence can be kept out only if its unfairly prejudicial effect 'substantially outweigh[s]' its probative value", and "when evidence is highly probative, 'even a large risk of unfair prejudice may be tolerable.'") (internal citations omitted).

In order to reduce the risk of prejudice regarding its evidence of Diaz's other bad acts, the government states that "[d]uring its case-in-chief [], [it] seeks only to introduce the existence of the investigations, and to reserve its right to offer the results of those investigations—Diaz's debarments and suspensions—depending on how the proceedings unfold." (Doc. 100 at 7). Nor will the government present evidence about the findings of the investigations into Diaz and will only elicit testimony about the nature of the investigations only where it mirrors the allegations of the scheme to defraud here." (Id. at 8). The government also states that "[it] does not intend to explore the underlying circumstances of each termination, and has redacted from the associated Forms U5 dozens of pages of customer complaints and

11

regulatory inquiries and actions lodged against Diaz." Further, it states that "each redacted Form U5 offered at trial will include the date of the termination, and the succinct, one-sentence reason for the termination; all of which is publicly-available information." (Id. at 6).

## III. CONCLUSION

For the foregoing reasons, the court will **DENY** Diaz's motion *in limine*, (Doc. 98), and it will allow the government to introduce the above mentioned evidence. An appropriate order shall follow.

s/ *Malachy E. Mannion*<br>
**MALACHY E. MANNION**<br>
**United States District Judge**

**Date: January 8, 2020**

16-122-01.wpd