# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Criminal No. 3:16-CR-122** |
| **v.** | : | **(JUDGE MANNION)** |
| **ANTHONY DIAZ,** | : | |
| **Defendant.** | : | |

## MEMORANDUM

Presently before the court is Defendant, Anthony Diaz's, *pro se* motion to vacate pursuant to 18 U.S.C. §2255. (Doc. 214.) On January 30, 2020, Defendant was convicted of *inter alia* wire fraud after a 13-day trial. Specifically, Defendant was found to have misled over 25 of his mostly elderly clients into investing in high-risk, speculative, and illiquid investments that he falsely advertised were low risk, guaranteed, and easily withdrawable. Defendant earned millions of dollars in commissions on these investments, but many of his clients lost their life savings. On March 26, 2021, this court sentenced Defendant to 210-months imprisonment. Subsequently, the Third Circuit affirmed both Defendant's conviction and sentence. However, through the present motion Defendant seeks to collaterally attack his conviction and sentence by arguing: (1) a new Supreme Court holding has invalidated his conviction; (2) his trial counsel was ineffective for failing to call certain witnesses; (3) his sentencing counsel

was ineffective for entering into a stipulation with the government as to the amount of loss from Defendant's fraud; and (4) a new Third Circuit holding has invalidated his sentence. As discussed more fully herein, the court finds that all these arguments lack merit and will **DENY** Defendant's motion without a hearing.[1]

## I. <u>BACKGROUND</u>

Defendant was a financial planner from approximately January 2000 through April 2015. His clients were mostly elderly and unsophisticated investors, who relied on his expertise and advice. Despite receiving instructions from these clients to invest their money –retirement and college savings—in safe, low-risk investments, Defendant persuaded them to invest in high-risk alternative investment products. Defendant misrepresented these products as guaranteed against depreciation and withdrawable at any time, when in fact they were highly speculative and had multi-year holding periods, sometimes subject to unilateral and indefinite extension by the investment vehicle. Additionally, many of Defendant's clients did not meet

---

[1] In his reply brief Defendant improperly raises an additional claim based on ineffective assistance of appellant counsel. But regardless of how this argument was raised it still lacks merit and does not entitle Defendant to relief under §2255.

the minimum thresholds to invest in these products but Defendant and his staff falsified the clients' documents without their knowledge.

Over the course of the scheme, Defendant was caught falsifying client documents and warned against the practice by at least four broker-dealers he worked under. In total Defendant was fired by five different broker-dealers and permitted to resign by a sixth. Defendant was also subject to multiple regulatory agency investigations during this time. He and his staff concealed all this information from his clients. Still Defendant earned commissions from the alternative investments products he funneled his clients' money into that were often double to quadruple those paid by more conventional products. He spent the millions of dollars he earned in commissions on real estate, vehicles, and vacations. Ultimately Defendant's clients lost most, or all the money they invested through him. At trial, Defendant's clients testified that had they known the truth about Defendant's professional standing, they would not have invested their money in the products he recommended.

At the end of trial, a jury convicted Defendant of 7 counts of wire fraud in violation of 18 U.S.C. §1343 and 4 counts of mail fraud in violation of 18 U.S.C. §1341. On December 11, 2020, the United States Probation Office prepared and circulated a final Presentence Report ("PSR") that applied USSG §2B1.1 to Defendant's convictions and found that a number of

enhancements applied, including a loss to over 25 victims, sophisticated means, and securities violations. The PSR also applied a 2-level role enhancement for leading the fraud and a 2-level obstruction of justice enhancement for committing perjury at trial. The PSR further found that the loss from Defendant's crime was greater than $3,500,000 but less than $9,500,000, which increased his offense level by 18 levels. Through counsel Defendant objected to each of these enhancements. But as to the loss amount the government retained experts, who were prepared to establish at sentencing that the loss suffered by 10 of the 11 victims who testified at trial did in fact exceed $3,500,000. However, prior to sentencing the parties stipulated to a loss range of greater than $1,500,000 but less than $3,500,000 resulting in only a 16 level increase to Defendant's base level. Defendant personally signed this stipulation and did not further object to it at sentencing.

At sentencing, the court heard argument on the rest of Defendant's objections to the PSR and concluded that each of the remaining enhancements did apply. As a result, the court calculated Defendant's offense level as 39, which given his criminal history category of I, gave him an advisory guideline range of 262 to 327 months imprisonment. After

weighing the §3553(a) sentencing factors, the court varied downward to impose a term of 210 months imprisonment.

Defendant appealed both this sentence and his conviction to the Third Circuit. Among the many claims Defendant advanced, he argued that the court's sentence was substantively unreasonable. However, the Third Circuit affirmed both Defendant's conviction and sentence, which it characterized as "reasonable, indeed lenient." (Doc. 210-2 pp. 8-9.) Nonetheless Defendant filed the present motion collaterally attacking both his conviction and sentence.

## II. LEGAL STANDARD

### A. Motion to Vacate

Under 28 U.S.C. §2255, a prisoner in federal custody "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on "the ground that the sentence was imposed in violation of the laws of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." §2255(a).

Generally, "[i]n order to prevail on a §2255 motion to vacate, set aside, or correct a sentence, a Petitioner must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *United States v. Bates*, 2008 WL 80048, at *2 (M.D. Pa. Jan. 7, 2008) (quoting *Mallet v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). "The petitioner bears the burden of proof under §2255 and must demonstrate his right to relief by a preponderance of the evidence." *United States v. Ayers*, 938 F. Supp. 2d 108, 112 (D.D.C. 2013) (citation omitted).

When a petitioner brings a motion pursuant to §2255, the Court has discretion whether to conduct a hearing but is not required to hold an evidentiary hearing if "the motion and files and records of the case show conclusively that the movant is not entitled to relief." *United States v. Booth*, 432 F.3d 542, 545-546 (3d Cir. 2005). However, "[a] hearing is necessary only where the record does not resolve factual allegations, such as in a situation where allegations relate primarily to purported occurrences outside the courtroom upon which the record can shed no real light." *United States v. Jackson*, 2006 WL 3333833 *7 (E.D. Pa. 2006) (Concluding that a hearing was not required because the petitioner pointed to no evidence outside the record that had a bearing upon his claim.) Moreover, "a defendant would not

be entitled to a hearing if his allegations were contradicted conclusively by the record, or if the allegations were patently frivolous." *Solis v. United States*, 252 F.3d 289 (3d Cir. 2001).

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees the accused in all criminal prosecutions "the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to the assistance of counsel is "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A defendant may be deprived of this right where his counsel fails "to render adequate legal assistance." *Id.* The right exists not only during a jury trial which determines the defendant's guilt or innocence, but also "during sentencing in both noncapital and capital cases." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012).

An ineffective assistance of counsel claim requires that a defendant show (1) "that his counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Williams v. Taylor*, 529 U.S. 362, 390 (2000) (quoting *Strickland*, 466 U.S. at 687). "To establish ineffectiveness, a defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 390–91. "To establish prejudice, he must show that there is a reasonable probability that, but for

- 7 -

counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 391.

Where counsel's deficiency occurred at sentencing, even "a minimal amount of additional time in prison" which results because of that deficiency can constitute prejudice. *Glover v. United States*, 531 U.S. 198, 203 (2001) ("[O]ur jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance."); *see also United States v. Sepling*, 944 F.3d 138, 144 (3d Cir. 2019) (citing *Glover*, 531 U.S. at 203) ("It is now firmly established that a defendant's constitutional right to effective representation extends to sentencing hearings. The fact that counsel's dereliction may only have resulted in a comparatively 'small' increase in the amount of time a defendant is incarcerated neither negates nor lessens the Sixth Amendment's guarantee.").

### III. <u>DISCUSSION</u>

Defendant motions to vacate his conviction and sentence by arguing: (1) a new Supreme Court holding has invalidated his conviction; (2) his trial counsel was ineffective for failing to call certain witnesses; (3) his sentencing counsel was ineffective for entering into a stipulation with the government as to the amount of loss from his fraud; and (4) a new Third Circuit holding has

invalidated his sentence. In his reply brief Defendant also attempts to argue for the first time that his appellant counsel was ineffective for failing to raise additional claims on his direct appeal. The court does not deem it necessary to hold an evidentiary hearing on any of these arguments and will address each of them in turn here.

### A. New Supreme Court Precedent

Defendant first argues that the Supreme Court's recent holding in *Ciminelli v. United States*, 598 U.S. 306 (2023), has invalidated his conviction. In *Ciminelli*, the Supreme Court invalidated a theory of fraud prosecutions that had been advanced in the Second Circuit, known as the "right-to-control" theory. Under the right-to-control theory, a defendant is guilty of wire fraud if he schemes to deprive the victim of "potentially valuable economic information" "necessary to make discretionary economic decisions." *United States v. Percoco*, 13 F.4th 158, 170 (2d Cir. 2021) (internal quotation marks omitted). The Second Circuit advanced this theory despite the Supreme Court previous finding that "federal fraud statutes criminalize only schemes to deprive people of traditional property interests." *Cleveland v. United States*, 531 U.S. 12, 24 (2000). Since "potentially valuable economic information necessary to make discretionary economic decisions" is not a traditional property interest, the Supreme Court held that

the right to control theory is not a valid basis for liability under federal wire fraud statutes. *Ciminelli,* 598 U.S. at 309.

Defendant argues that *Ciminelli* represents a new substantive rule that narrows the scope of both federal wire and mail fraud statues to exclude the type of conduct the government presented evidence on at trial. Defendant is correct that *Ciminelli* limits the scope of the federal wire fraud statutes but is wrong in his application of that case to his conduct. Defendant did not just deprive his victims of "information," or the right to control their assets, he also defrauded them of their actual property. The fact that Defendant's victims paid money to brokerage firms instead of directly to him is immaterial. The elements of fraud crimes require only that a defendant schemes to defraud another of money or property. There is no requirement that any money pass directly from victim to defendant. *See* Third Circuit Criminal Jury Instructions §§6.18.1341 and 6.18.1341-1. Furthermore, Defendant was never indicted on, nor was the jury charged with, a right to know theory, as was the case in *Ciminelli*.

Despite these facts Defendant argues in his reply brief that the court cannot say he was not convicted on right to control theory and its necessary for the court to hold an evidentiary hearing. The court disagrees. Defendant cites *Sec. & Exch. Comm'n v. Govil*, 86 F.4th 89, 105 (2d Cir. 2023) as an

"identical case" where the Second Circuit applied *Ciminelli*. However, *Govil* is neither identical nor even analogous to Defendant's case. In *Govil*, a securities fraud, not wire or mail fraud case, the Second Circuit cited *Ciminelli*, which it explicitly noted arose in "a different context," as casting doubt on the proposition that mere deception without harm to property rights is sufficient to state a federal fraud claim. In part because of this doubt the Second Circuit remanded the case to the district court for a specific finding on pecuniary loss. Besides the fact that Second Circuit rulings are not binding on this court, *Govil* does not apply to Defendant's case because his victims were not merely deceived, their property's rights, namely their life savings, were harmed and in some cases lost entirely.

Still, Defendant argues that there was no evidence presented at trial that he materially misrepresented the actual nature of the products being sold and his clients got exactly what they paid for. He claims to have given his clients paperwork, which contained the details of the investment they were making and thus cannot be held responsible for his client's failure to read the fine print. Such arguments totally overlook the evidence that regardless of the documentation Defendant gave his clients, Defendant lied to his clients about the products he sold them as well as his own professional standing, and had they known the truth would not have invested their money

through him. Accordingly, *Ciminelli* offers Defendant no basis for relief and his claim based on that case will be denied for want of merit.

## B. Ineffective Assistance of Trial Counsel

Second, Defendant argues that his trial counsel was ineffective for failing to present favorable evidence and call witnesses that were available to testify on his behalf. However, Defendant does not make any arguments on this claim in the brief in support of his motion. Instead, he only attaches a list of 18 uncalled witnesses and copies of emails he sent his trial counsel to his brief. Defendant claims that this information alone is enough for the court to grant him an evidentiary hearing. Defendant is again wrong. Although he identifies additional witnesses that he believes could have testified at his trial, Defendant does not demonstrate how any of their testimonies could have overcome the testimonies of his victims who all testified that Defendant lied to them and had they known the truth have not invested their money through him.

Furthermore, the decision of whether to call or not call witnesses is a strategic decision of trial counsel that courts are ill-equipped to and cautioned against second guessing. *See, e.g., Shaw v. United States*, 729 Fed. Appx 757, 759 (11th Cir. 2018) ("complaints about uncalled witnesses are not favored because… allegations of what a witness would have testified are

- 12 -

largely speculative…[and] [d]eciding which witnesses to call is the epitome of a strategic decision, and it is one that we seldom, if ever, second guess")(internal citations omitted).

In his reply brief Defendant still maintains that he is entitled to an evidentiary hearing because at a minimum the government acknowledges (in a footnote) that at least one of his proposed additional witnesses could have rebutted the government's evidence. Defendant is correct that the government does acknowledge an attached declaration from one of Defendant's proposed witnesses, who claims she could have directly refuted one of the government's witnesses but this fact alone by no means establishes that the outcome of his trial would have been different because of this one witness.

Likewise, Defendant's own attached declaration claiming that his trial counsel failed to call expert witnesses he requested and fell asleep during trial[2] does not establish a basis for an evidentiary hearing or even relief. To establish entitlement to relief either Defendant needs to show that but for these alleged deficiencies the outcome of this trial would have been different. Defendant has failed to do so here. Even assuming the first of these

---

[2] The Court was present during the entire trial and observed counsel. This allegation that defense counsel fell asleep is preposterous. To the contrary, his counsel was notably well prepared and continually vigilant.

allegations are true, Defendant does not indicate how different conduct by trial counsel would have overcome the overwhelming evidence of his fraud, namely the testimony of his numerous victims, hundreds of pages of fraudulently prepared documents and the defendant's own incredulous testimony. Accordingly, Defendant can neither show his trial counsel was deficient nor that he was prejudiced by trial counsel's conduct and his claim based on ineffective assistance of trial counsel will be denied for want of merit.[3]

### C. Ineffective Sentencing Counsel

Third, Defendant argues that his sentencing counsel was ineffective for stipulating to an amount of loss that increased his offense level by 16 levels. Specifically, Defendant claims that his counsel should not have agreed to such a stipulation because his attorney should have known Defendant's clients never directly paid him any money and therefore could not legally be considered victims. Again, Defendant bases his argument on a misunderstanding of the elements of wire and mail fraud. He cites *Cleveland* for the proposition that fraud victims are only victims of a defendant when they pay money directly to that defendant. Defendant

---

[3] It is noteworthy that, on the court's view, Mr. Gelber was one of the most competent trial counsel this court has had appear before it in a complicated criminal trial.

misstates the law. *Cleveland* only holds that wire and mail fraud statutes are meant to protect property rights. It does not change the well-established elements of these crimes that only require the government show the defendant (1) devised a scheme to defraud; (2) use of the mails or wires to further that scheme; and (3) fraudulent intent. *See* 18 U.S.C. §§1341, 1343*; United States v. Syme,* 276 F.3d 131, 142 (3d Cir. 2002).

In his reply brief Defendant cites four additional cases that he claims support the proposition that his clients cannot be considered victims and that his sentencing counsel should have known about. *United States v Shellef*, 507 F.3d 82 (2d Cir. 2007); *United States v. Starr* 816 F. 2d 94 (2d Cir. 1987); *United States v Takhalov*, 827 F.3d 1307 (11th Cir. 2016); and *Kisor v. Wilkie*, 588 U.S. 558 (2019). The first three of these cases are not binding on this court and the last while binding does not even address the issues presently at bar. *Kisor* specifically addresses the applicability of *Auer* deference to Veterans Administration appeals and does not even mention the word fraud. Regardless the three out of circuit cases do not add an additional element to federal wire and mail fraud statutes. To the contrary these cases confirm that Defendant's scheme constituted wire and mail fraud. For example, in *Starr*, the Second Circuit held:

> Misrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution. Instead, the deceit

must be coupled with a contemplated harm to the victim [that] affect[s] the very nature of the bargain itself. Such harm is apparent where there exists a discrepancy between benefits reasonably anticipated because of the misleading representations and the actual benefits which the defendant delivered, or intended to deliver.

816 F.2d at 98. This type of discrepancy clearly existed here. As a result of Defendant's misrepresentations his clients reasonably anticipated that they would enjoy the benefits of investing their savings in low-risk highly liquid investments. Instead, they received only the detriment of investing in high-risk illiquid investments, which Defendant intentionally funneled their money into to secure higher commissions for himself. Accordingly, Defendant's clients were victims, his sentencing counsel was not ineffective for stipulating to a loss lower than actually proveable and his claims to the contrary will be denied for want of merit.

### D. New Third Circuit Precedent

Fourth, Defendant argues that under *United States v. Banks*, 55 F.4th 246, 258 (3d Cir. 2022), a Third Circuit case decided over a year and half after he was sentenced, his sentence should be vacated. In *Banks* the Third Circuit held that the graduated loss table found at USSG §2B1.1(b) reaches only "actual loss," not "intended loss." 55 F.4th at 258. As such Defendant argues that his sentence, specifically his 16-level loss enhancement calculated using the USSG §2B1.1 table, must be vacated because the court

did not make any determination as to whether the loss amount attributed to him was actual or intended. However, *Banks* has not been held to be retroactive on collateral review and should not be held as such in the future because it does not create a new substantive rule. *See Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (A new substantive rule narrows the scope a criminal statute by interpreting its terms or places particular conduct or persons covered by a statute beyond the state's power.) Thus, *Banks* does not establish entitlement to relief under §2255.

Moreover, Defendant's trial and sentencing records indicate that Defendant's conduct caused a significant actual loss. The parties stipulated to a loss amount between $1,500,000 and $3,500,000 million and agreed to a restitution figure of $1,020,840.10 exclusive of credits from civil settlements that offset several of the victims' losses. Even if the actual loss from Defendant's conduct was pegged at the lowest of these amounts, Defendant would have still received a 14-level increase, resulting in guideline range of 210 to 262 months. Due to the court's downward variance Defendant was not only sentenced within any potential lower range but at the bottom of it. Accordingly, *Banks* offers Defendant no basis for relief and his claim based on that case will be denied for want of merit.

### E. Ineffective Assistance of Appellant Counsel

Finally, in his reply brief Defendant attempts to recharacterize his argument about *Banks* as an ineffective assistance of appellant counsel claim and argues that the government "tellingly" did not address that claim in its brief in opposition. However, in his motion Defendant does not reference his appellant counsel regarding his argument about *Banks* and did not identify ineffective assistance of appellant counsel as an independent ground for relief. Thus, there was no such claim for the government to oppose.

To the extent that Defendant still argues his appellant counsel was ineffective in his reply brief such arguments are improperly raised and need not be considered by the court. *See Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n. 11 (3d Cir. 1992) (A moving party "may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief."); *See also Judge v. United States*, 119 F. Supp. 3d 270, 284 (D.N.J. 2015). (This doctrine applies not only in standard civil suits, but is also applicable to reply briefs in habeas proceedings as "[b]asic fairness requires that an opposing party have a fair notice of his adversary's claims, as well as an opportunity to address those claims.")

Nonetheless for the sake of good order the court will discuss why Defendant's ineffective assistance of appellant counsel claim also fails on the merits. Defendant argues that his counsel did not raise multiple meritorious claims on his direct appeal. Specifically, he argues that his counsel failed to appeal the admissibility of two government exhibits, alleged hearsay testimony regarding those exhibits, and an additional list of documents that he claims should have been excluded under Federal Rule of Evidence 404. However, Defendant does not explain why these exhibits and testimony were inadmissible and does not even identify the disputed additional documents let alone explain how they prejudiced him.

All Defendant offers in support of his argument is citations to several cases that do not explain how Defendant's appellant counsel was ineffective or otherwise demonstrate entitlement to relief under §2255. First Defendant again cites *Ciminelli* and *Cleveland*, which as previously discussed do not undermine his conviction. Next, he cites two out of circuit cases that are not binding on this court. *United States v. O'Connor*, 656 F.3d 630, 644 (7th Cir. 2011); *United States v. Motz*, 652 F. Supp. 2d 284, 296 (E.D.N.Y. 2009). Finally, he cites two Supreme Court and two Third Circuit case about the admissibility of evidence under Rule 404. *Van Buren v. United States*, 593 U.S. 374 (2021); *Huddleston v. United States*, 485 U.S. 681, 691 (1988);

*United States v. Caldwell*, 760 F.3d 276, 277-78 (3d Cir. 2012); and *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010). But Defendant does not explain how these cases apply to his case. He merely asserts that the vast majority of the "documentation evidence" used at trial clearly violated established law because his past "issues" with regulatory agencies were not part of the government's case unless he was convicted under the right to control theory invalidated in *Ciminelli*. (Doc. 226 pp. 6-7)

Assuming that the unidentified documents in question related to the multiple regulatory proceedings Defendant concealed from his clients, these documents were not admitted in violation of Rule 404. Before trial Defendant filed a motion *ad limine* to exclude these documents on the basis they constituted evidence of prior bad acts in violation of Rule 404. (Doc. 98.) However, the court denied this motion finding that these documents constituted direct evidence of Defendant's scheme to defraud his clients, who testified that Defendant lied to them about his professional standing and had they known the truth would not have invested their money through him, and thus were beyond the scope of Rule 404. (Doc 101.)

Moreover, even if this evidence was wrongly admitted, such an error would be harmless because a jury still would have convicted Defendant based on how he misled his clients about the nature of their investments.

The fact Defendant also mislead his clients about his professional standing only added to the government's overarching case that he lied to his clients leading them to lose most if not all their life savings. Accordingly, Defendant's appellant counsel was not deficient for not raising these issues on direct appeal nor did their conduct prejudice Defendant and had Defendant properly raised this claim it too would be denied for want of merit.

## F. Certificate of Appealability

To receive a certificate of appealability under §2253(c) a Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims at issue debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Defendant has made no such showing, and certificate of appealability will not be issued in his case.


## IV. <u>CONCLUSION</u>

Based on the foregoing, Defendant, Anthony Diaz's, motion to vacate will be **DENIED** and a certificate of appealability will not be issued. An appropriate order follows.

<u>s/ Malachy E. Mannion</u>
**MALACHY E. MANNION**
**United States District Judge**

**DATE: August 6, 2024**
16-122-11

- 21 -